UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KATHERINE M. REHM,

        Plaintiff,

    vs.

YOUNG MEN'S CHRISTIAN
ASSOCIATION OF GREATER
WAUKESHA COUNTY, INC.,

       Defendant.

Case No. 1:21-cv -00237-PP

---

**DEFENDANT YOUNG MEN'S CHRISTIAN ASSOCIATION OF
GREATER WAUKESHA COUNTY, INC.'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

---

**MICHAEL BEST & FRIEDRICH LLP**

By:    /s/ Holly E. Courtney
    Denise Greathouse, SBN 1055644
    790 North Water Street, Suite 2500
    Milwaukee, WI 53202
    Telephone: (414) 271-6560
    E-mail: dlgreathouse@michaelbest.com

    Holly E. Courtney, SBN 1081696
    1 S. Pinckney Street, Suite 700
    Madison, WI 53703
    Telephone: (608) 257-3501
    Email: hecourtney@michaelbest.com

    *Attorneys for Defendant Young Men's
    Christian Association of Greater Waukesha
    County, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................**Error! Bookmark not defined.**

INTRODUCTION ........................................................................................ 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................... 3

LEGAL STANDARD.................................................................................. 3

ARGUMENT .............................................................................................. 4

I.      REHM CANNOT PROVE THAT YMCA-GWC VIOLATED TITLE VII
        (COUNT I) OR THE EPA (COUNT II) BY PAYING HER LESS THAN VP OF
        OPERATIONS GEOFF MERTENS ...................................................... 4

        A.      Rehm Cannot Show That She Was Paid Less Than Mertens Because Of
                Her Sex Under Title VII. ........................................................ 4

                1.      Rehm has not presented evidence of discriminatory intent to prove
                        her case under the direct method ............................................ 4

                2.      Rehm cannot show a *prima facie* case of Title VII unequal pay
                        under the indirect method ...................................................... 5

                        a.      Mertens Is Not Similarly Situated to Rehm ....................... 6

        B.      Rehm Has No Actionable Claim Under The EPA.............................. 7

                1.      Rehm Cannot Show a *Prima Facie* Case of EPA Discrimination............. 7

        C.      The YMCA Based The Differential In Pay Between Rehm And Mertens
                On Factors Other Than Sex........................................................ 9

II.     REHM CANNOT PROVE THAT YMCA-GWC TERMINATED HER BASED
        UPON HER GENDER AND/OR CHILDBEARING CAPACITY ................... 10

        A.      Ms. Rehm Offers No Direct Evidence Of Discriminatory Intent To Prove
                Her Case Under The Direct Method ............................................. 10

        B.      Rehm Cannot Show A *Prima Facie* Case Under the Indirect Method................. 11

                1.      Rehm not meeting the YMCA's legitimate job expectations at the
                        time of her termination.......................................................... 11

                2.      Rehm has not identified any similarly situated employees outside
                        of her protected class that were treated more favorably. ................... 13

i

3.    YMCA-GWC had legitimate, nondiscriminatory reasons for
      terminating Rehm................................................................... 14

4.    Rehm cannot show YMCA-GWC's stated reasons are pretext for
      sex discrimination ................................................................ 14

III.  REHM CANNOT PROVE THAT YMCA-GWC RETALIATED AGAINST
      HER FOR ENGAGING IN PROTECTED ACTIVITY UNDER TITLE VII OR
      EPA (COUNTS 4 & 5) ...................................................................... 15

A.    Rehm Did Not Engage In Protected Activity Under Title VII Or The EPA ........ 16

B.    Plaintiff Cannot Present Sufficient, Relevant Evidence Which Infers
      Retaliatory Intent By CEO Becker ...................................................... 17

C.    Rehm Cannot Show A *Prima Facie* Case Of Retaliation Under Title VII
      Or The EPA.................................................................................... 18

1.    Rehm did not engage in protected activity ................................. 19

2.    Rehm cannot demonstrate that there was a causal link between the
      protected activity and the adverse action. ................................. 19

3.    There is no evidence that YMCA-GWC's articulated legitimate,
      non-retaliatory reasons for termination were pretext for
      discrimination ........................................................................ 20

D.    Declining To Refund Rehm's YMCA Donation Is Not Actionable Under
      Title VII Or The EPA ...................................................................... 20

CONCLUSION............................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amrhein v. Health Care Serv. Corp.*,
   546 F.3d 854 (7th Cir. 2008) ............................................................................17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)....................................................................................3, 4

*Argyropoulos v. City of Alton*,
   539 F.3d 724 (7th Cir. 2004) ............................................................................19

*Bio v. Fed. Express Corp.*,
   424 F.3d 593 (7th Cir. 2005) ..............................................................................6

*Brazinski v. Amoco Petroleum Additives Co.*,
   6 F.3d 1176 (7th Cir. 1993) ................................................................................4

*Burks v. Wis. Dep't of Transp.*,
   464 F.3d 744 (7th Cir. 2006) ............................................................................13

*Campana v. City of Greenfield*,
   164 F. Supp. 2d 1078 (E.D. Wis. 2001), *aff'd mem.*, 38 F. App'x. 339 (7th Cir.
   2002) ..................................................................................................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................3

*Collins v. Associated Pathologists, Ltd.*,
   844 F.2d 473 (7th Cir. 1988), *cert. denied,* 488 U.S. 852 (1988)............................3

*Cullen v. Ind. Univ. Bd. of Trs.*,
   338 F.3d 693 (7th Cir. 2003) ..............................................................................7

*Curtis v. Costco Wholesale Corp.*,
   807 F.3d 215 (7th Cir. 2015) ............................................................................17

*Dale v. Chicago Tribune Co.*,
   797 F.2d 458 (7th Cir. 1986) ............................................................................14

*Dass v. Chi. Bd. of Educ.*,
   675 F.3d 1060 (7th Cir. 2012) ..........................................................................17

*Dey v. Colt Constr. & Dev. Co.*,
   28 F.3d 1446 (7th Cir. 1994) ..............................................................................9

Case 2:21-cv-00237-PP   Filed 02/18/22   Page 4 of 28   Document 31

*Fallon v. Illinois*,
    882 F.2d 1206 (7th Cir. 1989) ................................................................9

*Gleason v. Mesirow Fin., Inc.*,
    118 F.3d 1134 (7th Cir. 1997) ..............................................................19

*Heise v. Canon Sols. Am., Inc.*,
    No. 16C8284, 2018 U.S. Dist. LEXIS 122320 (N.D. Ill. July 23, 2018) ..............19

*Herron v. DaimlerChrysler Corp.*,
    388 F.3d 293 (7th Cir. 2004) ...............................................................12

*Johnson v. Advocate Health & Hosps. Corp.*,
    892 F.3d 887 (7th Cir. 2017) ...............................................................17

*Johnson v. Univ. of Wisconsin-Eau Claire*,
    70 F.3d 469 (7th Cir. 1995) .................................................................18

*Karlo v. St. Augustine Coll.*,
    No. 20-cv-5084, 2021 U.S. District LEXIS 100525 (N.D. Ill. May 27, 2021) ......19

*Kellogg v. Ball State Univ.*,
    984 F.3d 525 (7th Cir. 2021) .............................................................4, 5

*Krause v. City of LaCrosse*,
    246 F.3d 995 (7th Cir. 2001) ...............................................................18

*Lauderdale v. Ill. Dep't of Human Servs.*,
    210 F. Supp. 3d 1012 (C.D. Ill. 2016) ......................................................9

*Lauderdale v. Ill. Dep't of Human Servs.*,
    876 F.3d 904 (7th Cir. 2017) .................................................................5

*Leong v. SAP Am., Inc.*,
    67 F. Supp. 3d 972 (N.D. Ill. 2014) ........................................................16

*Lewis v. Wilkie*,
    909 F.3d 858 (7th Cir. 2018) ...............................................................20

*Majors v. General Elec. Co.*,
    714 F.3d 527 (7th Cir. 2013) ...............................................................19

*Marzullo v. Nlmk Ind.*,
    2:18-CV-476-TLS, 2021 U.S. Dist. LEXIS 52694 (N.D. Ind. Mar. 22, 2021) ......21

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)......................................................................16, 18

*McKenzie v. Ill. Dep't of Transp.*,
92 F.3d 473 (7th Cir. 1996) ......................................................................18

*Mercer v. Cook Cnty*,
527 F. App'x. 515 (7th Cir. 2013) ............................................................11

*Merillat v. Metal Spinners, Inc.*,
470 F.3d 685 (7th Cir. 2006) ......................................................................7

*Millbrook v. IBP, Inc.*,
280 F.3d 1169 (7th Cir. 2002) ..................................................................15

*Nadine Davenport v. Grand Lodge of the Free and Accepted Masons*,
No. 00-047-C, 2004 U.S. Dist. LEXIS 20254 (S.D. Ind. Sept. 30, 2004) ................................8

*Naik v. Boehringer Ingelheim Pharms., Inc.*,
627 F.3d 596 (7th Cir. 2010) ....................................................................11

*Nance v. NBC Universal Media, LLC*,
No. 16-11635, 2019 U.S. Dist. LEXIS 125621 (N.D. Ill. July 29, 2019) ..............................16

*Ortiz v. Werner Enters., Inc.*,
834 F.3d 760 (7th Cir. 2016) ......................................................................5

*Peele v. Country Mut. Ins. Co.*,
288 F.3d 319 (7th Cir. 2002) ....................................................................14

*Ptasznik v. St. Joseph Hosp.*,
464 F.3d 691 (7th Cir. 2006) ....................................................................13

*Sims-Fingers v. City of Indianapolis*,
493 F.3d 768 (7th Cir. 2007) ......................................................................8

*Smith v. Chi. Transit Auth.*,
806 F.3d 900 (7th Cir. 2015) ....................................................................17

*Smith v. Firestone Tire & Rubber Co.*,
875 F.2d 1325 (7th Cir. 1989) ..................................................................11

*Stewart v. Henderson*,
207 F.3d 374 (7th Cir. 2000) ....................................................................14

*Tibbs v. Admin. Office of Ill. Courts*,
860 F.3d 502 (7th Cir. 2017) ...............................................................15, 17

*Tomanovich v. City of Indianapolis*,
457 F.3d 656 (7th Cir. 2006) ....................................................................16

Case 2:21-cv-00237-PP   Filed 02/18/22   Page 6 of 28   Document 31

*Tropp v. Ingalls Mem'l. Hosp.*,
   No. 06 C 414, 2007 U.S. Dist. LEXIS 24837 (N.D. Ill. Mar. 21, 2007) ................................16

*Waite v. Wood Cnty.*,
   No. 16-cv-643, 2017 U.S. Dist. LEXIS 186237 (W.D. Wis. Nov. 9, 2017) ..........................20

*Warren v. Solo Cup Co.*,
   516 F.3d 627 (7th Cir. 2008) ..................................................................................................6

*Wernsing v. Dep't of Human Servs.*,
   427 F.3d 466 (7th Cir. 2005) ..................................................................................................9

*Young v. James Green Mgmt., Inc.*,
   327 F.3d 616 (7th Cir. 2003) ................................................................................................12

*Zayas v. Rockford Mem'l Hosp.*,
   740 F.3d 1154 (7th Cir. 2014) ..............................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ....................................................................................................................3

# INTRODUCTION

Defendant Young Men's Christian Association of Greater Waukesha County, Inc. ("Defendant" or "YMCA-GWC") submits this brief in support of its Motion for Summary Judgment, seeking judgment on Plaintiff's Complaint in its entirety. Plaintiff is pursuing a myriad of claims, including: (Count 1) unequal pay because of gender in violation of Title VII, (Count 2) unequal pay in violation of the Equal Pay Act (EPA), (Count 3) termination because of gender and/or child-bearing capacity in violation of Title VII, (Count 4) retaliation in violation of Title VII for a "complaint of pay inequity", and (Count 5) retaliation in violation of EPA for her "complaint of pay inequity." All of these claims should be swiftly dismissed based upon facts which simply cannot be disputed.

First, Plaintiff's unequal pay claims are not based on evidence (direct or indirect). Despite Rehm's continued attempts to downplay VP of Operations Geoff Mertens' qualifications, job duties and responsibilities, it simply cannot be disputed that Mertens had a higher salary than Rehm because he had a higher degree of education, more experience, different job duties and priorities, which CEO Becker found to be more complex and challenging than Rehm's. (DPFOF ¶¶ 15-20, 25, 28-29.) It cannot be disputed that at any given time during their tenures as VPs, Mertens was overseeing 4-5 full YMCA branches, which employed 100s of staff at each branch and had up to 1000s of daily visitors. (DPFOF ¶¶4, 29). Meanwhile, Rehm's job was intended to be strategic and focused at the Association level, and included only limited branch oversight duties until YMCA-GWC was able to transfer those responsibilities to Mertens. (DPFOF ¶¶ 23-25.) To be sure, Mertens and Rehm were not "similarly situated" in their positions for Rehm to state an unequal pay claim under Title VII, nor did they perform "equal work" for Rehm to state an EPA claim. Regardless, Rehm has not, and cannot, dispute that YMCA-GWC had legitimate, non-discriminatory reasons *other than sex* warranting the pay differential and dismissal of these claims.

1

Nor can Rehm show any evidence of pretext of sex-based pay discrimination. Indeed, it is undisputed that Becker gave her a raise after she raised a concern about her pay in 2018, reducing an already nominal pay differential from $2000 to $367 per year. (DPFOF ¶¶ 21, 96.)

Second, Rehm's claim that she was discriminated against based upon gender and/or childbearing capacity when CEO Becker fired her cannot withstand summary judgment. First, Rehm cannot show that CEO Becker (the decisionmaker) bore any discriminatory animus towards Rehm based upon her gender and/or childbearing capacity. Rather, YMCA-GWC permitted Rehm to take all time off as needed (which was very minimal) and Becker disputably showed compassions to Rehm regarding her IVF efforts. (DPFOF ¶¶102-112.) Further, surely if Becker bore a discriminatory animus towards pregnant women, or women who may have children, he would have fired the series of pregnant women in his staff, terminated Rehm when she told him she was undergoing IVF treatments (rather than wait 8 months), and not given his staff a 50% discount on childcare at the YMCA-GWC. (*See id.*) Rehm's attempts to use stray remarks, which were not directed to Rehm or related to any applicable employment decision at issue in this case, nor did anyone take seriously, creates no genuine dispute to avoid summary judgment. Rather, as the undisputed facts show, CEO Becker was simply forced to terminate Rehm's employment after numerous reported complaints regarding Rehm from her direct reports, branch executives and board members came to head to Becker in early 2020. (DPFOF ¶¶ 32-91.) Based on this total lack of leadership and disregard of job duties, Becker was forced to terminate Rehm's employment. Rehm will likely try to argue that CEO Becker was simply wrong to decide to terminate her employment. However, that is the relevant inquiry—Rehm instead must show that YMCA-GWC terminated her employment *because* of her gender/childbearing capacity, which she simply cannot do here.

Third, both of Rehm's retaliation claims fall flat as she presents no evidence that CEO Becker (the decisionmaker) bore a retaliatory animus toward her. As a preliminary matter, Rehm did not engage in protected activity, as she indisputably did not complain that she was paid less than Mertens *because of her sex*. She simply stated that her pay was less than him. (DPFOF ¶ 92-93.) There was no connection with her gender and/or any EPA violation. (DPFOF ¶ 92-93.) Regardless, this wage "complaint" was made in 2018—CEO Becker gave Rehm a raise, numerous annual incentive bonuses, and nearly two years passed and the concern was never raised again. (DPFOF ¶¶ 92-97.)

For these reasons, as addressed in greater detail below, the Court should grant summary judgment on all Plaintiff's claims and dismiss Rehm's Complaint in its entirety.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The undisputed material facts in this case are set forth in Defendant's Statement of Material Facts pursuant to Civ. L.R. 56(b)(1)(c).

## LEGAL STANDARD

Summary judgment is not a "disfavored procedural shortcut," but is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment gives courts a mechanism to weed out "weak factual claims." *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476 (7th Cir. 1988), *cert. denied,* 488 U.S. 852 (1988). Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Id.* at 248. The Seventh Circuit does not require the Court to deny summary judgment on the basis of speculative theories or improbable plots, for neither creates a genuine issue of material fact. *See Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1184 (7th Cir. 1993) ("([F]anciful speculations would not defeat a motion for directed verdict and therefore cannot stave off a motion for summary judgment either.").

## ARGUMENT

### I. REHM CANNOT PROVE THAT YMCA-GWC VIOLATED TITLE VII (COUNT I) OR THE EPA (COUNT II) BY PAYING HER LESS THAN VP OF OPERATIONS GEOFF MERTENS

Rehm claims that YMCA-GWC violated Title VII and the Equal Pay Act (EPA) by paying her a slightly lower base salary then VP of Operations Geoff Mertens. While the legal frameworks may vary under Title VII and the EPA—the same facts which cannot be disputed require dismissal on both claims. Namely, Rehm and her purported comparator, Mertens, have very different job duties and responsibilities warranting the pay differential, and YMCA-GWC had legitimate, nondiscrimination reasons (*i.e.*, any factor other than sex) for this pay differential.

#### A. Rehm Cannot Show That She Was Paid Less Than Mertens Because Of Her Sex Under Title VII.

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation ... *because of such individual's ... sex.*'" *Kellogg v. Ball State Univ.*, 984 F.3d 525, 528 (7th Cir. 2021) (internal citations omitted). Rehm has not and cannot show that her sex was the reason (or any reason) her pay was less then colleague, Geoff Mertens.

##### 1. Rehm has not presented evidence of discriminatory intent to prove her case under the direct method

Rehm has not presented evidence to directly show that YMCA-GWC decided to pay her less because she is a female, without inference or presumption. To prove her case under the direct

method, the Seventh Circuit has explained that the proper inquiry for discrimination claims is whether the evidence "as a whole" "would permit a reasonable factfinder to conclude that the plaintiff's [protected class] . . . caused the . . . .adverse employment action." *Ortiz v. Werner Enters., Inc.,* 834 F.3d 760, 765 (7th Cir. 2016). Here, there is no such evidence.

Rehm presents no evidence that CEO Becker (or anyone else) considered her sex in any way when deciding her salary. She cites to no sex-based derogatory comments targeted towards Rehm and/or made when CEO Becker was making the salary decision(s). When Rehm generally raised concerns about her pay, CEO Becker did not shut Rehm down, but instead gave her a raise and continued to give her annual incentive bonuses. (DPFOF ¶¶ 92-96.)

### 2. Rehm cannot show a *prima facie* case of Title VII unequal pay under the indirect method

Rehm also cannot show that she was discriminated against based upon her sex under the indirect method. In order to show a *prima facie* case under the indirect method, she must show (1) that she was a member of a protected class, (2) she was meeting the employer's legitimate expectations, (3) she was subjected to an adverse employment action, and (4) similarly situated employees of the opposite sex were treated more favorably. *Lauderdale v. Ill. Dep't of Human Servs.*, 876 F.3d 904, 910 (7th Cir. 2017). "If that burden is met, the employer must articulate a 'legitimate, nondiscriminatory reason' for paying the plaintiff less." *Kellogg*, 984 F.3d at 528 (quoting *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)). Where the defendant offers a legitimate, nondiscriminatory reason for the pay differential, the burden shifts back to the plaintiff show pretext of discrimination. *Id.*

Rehm cannot show element 3 (similarly situated). While Plaintiff was not meeting job expectations at the time of her termination (see discussion below regarding Plaintiff's Count III), Becker was unaware of serious performance issues at the time he set the salaries.

- 5 -

Although they may have had the same job title, VP of Operations Geoff Mertens (responsible for branch oversight) was <u>not</u> similarly situated to Rehm at any time relevant to this Complaint.  An employee is similarly situated only if the employee is "comparable to the plaintiff in all material respects." *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008)) (citing *Crawford v. Ind. Harbor Belt R.R. Co.,* 461 F.3d 844, 846-47 (7th Cir. 2006)). "In evaluating whether two employees are directly comparable, the court must look at all relevant factors, including whether the employees '(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision.'" *Bio v. Fed. Express Corp.,* 424 F.3d 593, 597 (7th Cir. 2005) (quoting *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)).

Mertens and Rehm are not comparable in all material respects, including but not limited to the following undisputed facts: (1) Mertens had more extensive work experience, including (i) a longer tenure at YCMA-GMC and across YMCAs more broadly, (ii) advancing more quickly in leadership positions at the YMCA, and (iii) a longer reporting relationship with CEO Becker; (2) Mertens had more direct reports; (3) Mertens supervised four to five full branches; whereas, Rehm had minimal branch oversight and her job was supposed to be focused on strategy at the association level; (4) Mertens has a higher education (Master's degree in Physical Education/Sports Administration) than Rehm (Bachelor's degree in Economics); and (5) Mertens job duties as VP were more challenging and complex than Rehm's.  (DPFOF ¶¶ 15-29.) While Rehm tries to discount Mertens' branch oversight duties; she cannot dispute that during their tenures as VPs, Mertens' branches under his supervision employed hundreds of employees, often thousands of members visiting each day, multi-million-dollar budgets, and vast and often

unpredictable problems and issues that would need to be solved with Mertens' advice and/or involvement. (DPFOF ¶¶10, 19, 22, 28.) Further, Mertens cannot be a comparator to Rehm because, unlike Rehm, he was not the subject of extensive staff and board complaints for poor attendance, poor leadership, and/or lack of support. (DPFOF ¶¶ 32-35, 37, 41,44-51,61,63,70-71,75-76-81.)

For these same reasons--Mertens' education, experience, and more complex and challenging job duties —YMCA-GWC has articulated legitimate, nondiscriminatory reasons for the pay differential that cannot be overcome pretext. While Mertens' job was more challenging, the pay differential with Rehm was nominal—commencing at $2000 differential in salary to only approximately $367 annual difference in compensation. (DPFOF ¶ 21.)  To be sure, if Becker wanted to discriminate against Rehm in terms of pay he would not have set their salaries this closely, gave Rehm and Mertens equal incentive bonuses, and would not have given her a raise upon her request. (DPFOF ¶¶ 21, 96.)

### B. Rehm Has No Actionable Claim Under The EPA

Rehm's unequal pay claim also fails as a matter of law.

### 1. Rehm Cannot Show a *Prima Facie* Case of EPA Discrimination

"To establish a *prima facie* case of wage discrimination under the EPA, [Plaintiff] must show: (1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Cullen v. Ind. Univ. Bd. of Trs*., 338 F.3d 693, 698-99 (7th Cir. 2003) (affirming summary judgment for the employer). "Once a plaintiff establishes a 'common core' of tasks, [courts] ask whether any additional tasks make the jobs 'substantially different.'" *Merillat v. Metal Spinners, Inc*., 470 F.3d 685, 695 (7th Cir. 2006).

Notably, fact that Mertens and Rehm shared the same job title does not preclude summary judgment where the undisputed facts show that Rehm did not perform equal work to Mertens. *See Nadine Davenport v. Grand Lodge of the Free and Accepted Masons*, No. 00-047-C, 2004 U.S. Dist. LEXIS 20254, at \*36 (S.D. Ind. Sept. 30, 2004) (citing *Howard v. Lear Corp. EEDS & Interiors*, 234 F.3d 1002, 1005 (7th Cir. 2000) (affirming summary judgment for employer where HR manager at smaller plant had less demanding job than HR managers at larger plants); *Campana v. City of Greenfield*, 164 F. Supp. 2d 1078, 1091 (E.D. Wis. 2001) (granting summary judgment for defendant where plaintiff, who invested city funds and administered property tax collection, among other tasks, had substantially less responsibility than the comptroller who was ultimately responsible for the fiscal health of the entire city), *aff'd mem.*, 38 F. App'x. 339 (7th Cir. 2002).

Here, for the same undisputed facts that establish that Rehm and Mertens were not similarly situated (*i.e.*, not directly comparable in all material respects) under Title VII, Rehm also cannot establish the second element of the *prima facie* case because Rehm had very different skill, effort and responsibilities than Mertens (element 1). As discussed in detail above, Rehm's VP was focused on the strategic administrative goals at the association level (which had only a handful of employees) (DPFOF ¶ 24); whereas, Mertens had to supervise four to five full branches with multimillion dollar operating budgets, hundreds of employees, and 1000s of visitors.[1] (DPFOF ¶¶19, 28.)

Furthermore, "[w]hen evaluating whether equal pay is being paid for equal work, the size of the pay differential . . . is highly relevant." *Sims-Fingers v. City of Indianapolis,* 493 F.3d 768, 771 (7th Cir. 2007). Here, Mertens' first earned $2000 more per year; however, by the end of

---

[1] While Rehm initially had some branch oversight over the Southwest branch upon her promotion, Becker removed that branch from under her purview (DPFOF ¶ 25), and the New Berlin Wellness Center (not opened until 2019) under Rehm's supervision employs only a handful of employees (*not 100s* like a typical branch). (DPFOF ¶ 5, 43)

Rehm's tenure as VP, she was earning only $367 less than Mertens. Even if we were to believe that Rehm and Mertens had similarly challenging jobs, this nominal pay difference warrants summary judgment.

### C. The YMCA Based The Differential In Pay Between Rehm And Mertens On Factors Other Than Sex.

Even if the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to simply show that the "pay disparity is due to: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989) (citing 29 U.S.C. § 206(d)(1)(i)-(iv)).

The "any other factor other than sex" affirmative defense is "a broad 'catch-all' exception and embraces an almost limitless number of factors, so long as they do not involve sex." *Fallon*, 882 F.2d at 1211; *see also Dey v. Colt Constr. & Dev. Co*., 28 F.3d 1446, 1462 (7th Cir. 1994)*.* Indeed, this "factor need not be related to the requirements of the particular position in question, nor must it even be business-related." *Dey*, 28 F.3d at 1462. As the Seventh Circuit has repeatedly explained, its inquiry is not to "second-guess the employer's business judgment" when determining whether a wage differential is based on any factor other than sex. *Id.*, *see also Fallon*, 882 F.2d at 1211 ("courts and administrative agencies [must not] substitut[e] their judgment for the employer's judgment"). The justification need not be a "good reason," but merely a gender-neutral one. *Wernsing v. Dep't of Human Servs.*, 427 F.3d 466, 468 (7th Cir. 2005). It is not the Court's role to determine an appropriate standard for what is an "acceptable" business practice. *Lauderdale v. Ill. Dep't of Human Servs.*, 210 F. Supp. 3d 1012, 1018, (C.D. Ill. 2016), *Wernsing*, 427 F.3d at 468.

For the same undisputed facts discussed above, YMCA-GWC has unequivocally demonstrated that the pay differential between Rehm and Mertens was based on a combination of undisputed facts *other than sex* (e.g., education, experience, and job duties).

For these reasons, the Court should grant summary judgment on both Plaintiff's Title VII (Count I) and EPA (Count II) unequal wage claims.

## II. REHM CANNOT PROVE THAT YMCA-GWC TERMINATED HER BASED UPON HER GENDER AND/OR CHILDBEARING CAPACITY

Rehm cannot show that she was discriminated against based upon her gender/childbearing capacity under either the direct or indirect method under Title VII.

### A. Ms. Rehm Offers No Direct Evidence Of Discriminatory Intent To Prove Her Case Under The Direct Method

Again, CEO Becker made no discriminatory comments directed to or about Rehm's gender and/or childbearing capacity. Rehm cites to no specific gender-based comments or concerns (besides the isolated pregnancy remarks noted below). When discussing her IVF, Becker indisputably was compassionate, and the YMCA indisputably granted Rehm the very minimal time off she needed for IVF treatment (1-2 brief occasions total) and permitted to work remotely when she requested (on 1-2 occasions) (DPFOF ¶¶ 102-106, 110.) Rehm will likely try to argue that certain isolated remarks during a December 12, 2019 meeting jokingly at YMCA-GWC made by CEO Becker that he "needed to change the water" and that "no one else could get pregnant"; and that a co-worker told Rehm that Becker made a similar comment in jest about "being done after two" which was not made around or about Rehm. (See DPFOF ¶¶ 116-117.) No one took these bad jokes seriously, and people laughed. (DPFOF ¶¶ 116- 118.) Further, YMCA-GWC indisputably gives time off as needed for pregnancy and parental leave (including to those who were pregnant and/or had children and who were present for Becker's above-noted comment). (DPFOF ¶¶ 100, 120.) Further, if Becker wanted to discriminate against mothers (or parents,

generally), he surely would not have given his staff a 50 percent discount on childcare. (DPFOF ¶98.) To be sure, Becker's stray remarks do not raise sufficient facts to create any inference of discriminatory animus by Becker *regarding Rehm's gender and/or childbearing status*. *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir. 1989) (stating that discriminatory "*remarks*, as offered by the plaintiff, when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decision-maker in issue."); *see also Mercer v. Cook Cnty*, 527 F. App'x. 515, 521 (7th Cir. 2013) ("boorish or offensive stray remarks" insufficient to show unlawful harassment). These were silly jokes, not cruel and/or derogatory comments about or towards Rehm's gender or her childbearing capacity. Tellingly, Rehm never complained nor challenged Becker on either comment. (DPFOF ¶119.)

### B. Rehm Cannot Show A *Prima Facie* Case Under the Indirect Method

Other than belonging to a protected class (female), Rehm cannot demonstrate any of the remaining elements under the indirect method of proof. Namely, Rehm cannot show that she was (1) meeting YMCA-GWC's legitimate expectations at the time of her employment or (2) that others similarly situated outside her protected class were treated better than her. Further, she cannot show that YMCA-GWC's stated reasons for her termination were pretext, i.e., lies to cover up unlawful discrimination.

#### 1. Rehm not meeting the YMCA's legitimate job expectations at the time of her termination.

First, Rehm cannot show that she was meeting YMCA-GWC's legitimate expectations *at the time of her termination* (element 2). *See Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (illustrating that meeting employer's legitimate expectations in the past is irrelevant to Title VII analysis as employee must be meeting legitimate expectations at the time

of termination). Whether an employee is meeting an employer's legitimate expectations is considered broadly. *Zayas v. Rockford Mem'l Hosp.,* 740 F.3d 1154, 1158 (7th Cir. 2014); *see also Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 300 (7th Cir. 2004) (holding that plaintiff who performed some aspects of his job well, but had a confrontational and disrespectful attitude, could not show that he was meeting his employer's legitimate expectations). This is an issue that is often decided on summary judgment – just as it was decided in the *Zayas* and *Herron* cases, cited immediately above – where the material facts are not in dispute.

Rehm indisputably was not meeting her supervisor, CEO Becker's legitimate expectations in her position at the time of the termination decision. Though she will likely try to invoke blame-shifting tactics, Rehm simply cannot dispute that: YMCA-GWC staff at various levels, including some of her own direct reports along with most branch executives, were raising serious concerns about her attendance, leadership, support, and performance that all came to head to Becker in early 2020. (DPFOF ¶¶ 70-79, 81.) In addition to complaints from staff, YMCA-GWC board member(s) were also taking serious concerns with Rehm's performance. (DPFOF ¶¶61-64) To be sure, Rehm demonstrated a total lack of trust, leadership, and disregard of her job duties as Vice President of Operations establishing that she was not meeting YMCA-GMC legitimate job expectations (especially in an executive VP position). (DPFOF ¶¶ 73, 88-89.)

While Rehm may claim that some direct reports were upset she was fired; she cannot dispute that in addition to multiple branch executives (including one that was threatening to quit because of Rehm (DPFOF ¶¶ 69, 71), at least two of her own direct reports (Carley Hoezlel and Emily Salas) complained to YMCA-GWC about their struggles working with Rehm. (DPFOF ¶¶ 47, 50.) Regardless, opinions of non-decision makers, such as Rehm's direct reports, cannot withstand summary judgment. *See Young v. James Green Mgmt., Inc.,* 327 F.3d 616, 622 n.2 (7th

Cir. 2003) (describing how the opinions of a non-decision-maker are of little to no relevance to showing discriminatory intent).

Rehm will likely argue that it was not "fair" for her to be fired without a prior formal discipline and/or without conducting an intensive investigation into each and every one of the staff's and board member's reported concerns regarding Rehm. This is insufficient to defeat YMCA-GWC's Motion for Summary Judgment. As stated by the Seventh Circuit:

> [I]t is not our role to determine the competency of or interfere in employment decisions simply where we believe an employer has made a poor choice. Federal courts have authority to correct an adverse employment action only where the employer's decision is unlawful, and not merely when the adverse action is unwise or even unfair. "We do not sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation."

*Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006) (quoting *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005)).

For these reasons, Rehm cannot show that she was meeting YMCA-GWC's legitimate expectations as of February 13, 2020, the date of her termination.

### 2. Rehm has not identified any similarly situated employees outside of her protected class that were treated more favorably.

Rehm cannot show the "similarly situated" prong on this claim either. As explained above, "[i]n order for an individual to be similarly situated to the plaintiff, the plaintiff must show that the individual is 'directly comparable to her in all material respects.'" *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). There is no such person here. In order to be directly comparable, the comparator would need to have similar attendance problems (*e.g.*, regularly cancelling, missing, and/or arriving late to meetings) and to be the subject of various staff (direct reports and

operations leadership) and board complaints. Rehm had cited to no such person because no such person exists.

### 3. YMCA-GWC had legitimate, nondiscriminatory reasons for terminating Rehm

Even if Rehm could show a *prima facie* case of sex discrimination, her claim fails because YMCA-GWC had legitimate, nondiscriminatory reasons for firing her.

As explained, and which cannot be disputed, CEO Becker, after receiving and reviewing numerous staff complaints and reviewing documentation of complaints from across the YMCA-GWC (including that Rehm skipped meetings, was not around, and was not providing expected leadership or support to staff), Becker decided to terminate Rehm's employment due to her lack of leadership, lack of accountability, and disregard of job duties. (DPFOF ¶¶ 88-90.) These are all well-established, common sense, legitimate, non-discriminatory reasons for taking an adverse action against an employee. *See, e.g.*, *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 n.4 (7th Cir. 1986) ("The most obvious legitimate reason for the discharge of an employee is that that employee's inadequate performance necessitated his termination.").

### 4. Rehm cannot show YMCA-GWC's stated reasons are pretext for sex discrimination

Rehm also cannot show that YMCA-GWC's termination reasons were a pretext for sex discrimination. "Pretext," as the Seventh Circuit explained, "means a dishonest explanation, a lie rather than an oddity or an error." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). As the Seventh Circuit has emphasized time and again, in conducting the pretext analysis, the court is not required to reexamine an entity's business decision and review the propriety of the decision. *See Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). Rather, on the question of pretext, the focus "is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Id.* Thus, the issue is not whether the employer made the right decision,

but whether the employer honestly believes the rationale for its decision. The fact that an employer's decision was foolish, mistaken, unduly harsh, or wrongheaded is of no concern to the court in analyzing a discrimination claim. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002). Rather, the one and <u>only</u> question determinative of pretext is whether the employer "honestly believed" the proffered reason for the employment decision. *See id.* It is undisputed that is early 2020, CEO Becker received direct complaints from staff (e.g., concerns from Executive Director Schlitt that Rehm was unaccountable, had a poor work ethic, and created a bad work environment, even leading Schlitt to search for another job) (DPFOF ¶¶ 70-71) and a myriad of additional reported concerns form his executive leadership (including extensive reported concerns from VP Mertens, HR Director Jazwiecki, and CFO Daley). (e.g., DPFOF ¶¶77-81, 50-51). Even if all of these reported concerns were flat out lies, Rehm presents no evidence that shows that Becker made his decision based on sex or any other prohibited considerations.

Further, "[w]here multiple reasons are given, as in this case, the plaintiff faces a greater challenge. Showing that just one reason was a pretext may not be enough." *Tibbs v. Admin. Office of Ill. Courts,* 860 F.3d 502, 506 (7th Cir. 2017). Rehm cannot show one reason is pretext for discrimination, much less all these reasons, including but not limited to Rehm's lack of support, poor attendance, failure to execute tasks, etc., to defeat summary judgment.

For these reasons, Rehm's sex discrimination in termination claim cannot withstand summary judgment and must be dismissed.

## III. REHM CANNOT PROVE THAT YMCA-GWC RETALIATED AGAINST HER FOR ENGAGING IN PROTECTED ACTIVITY UNDER TITLE VII OR EPA (COUNTS 4 & 5)

Rehm's Retaliation claims also fail as a matter of law. In order to survive summary judgment on either claim, Rehm must adduce evidence that the decision-maker who terminated her employment acted with retaliatory intend based upon her purported unequal wage play claims.

For both Title VII and EPA claims, at the summary judgment stage, proof of retaliatory or discriminatory intent is analyzed under either the direct or indirect methods of proof articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

### A. Rehm Did Not Engage In Protected Activity Under Title VII Or The EPA

First and foremost, Rehm did not engage in protected activity under Title VII or the EPA. For this dispositive reason, both retaliation claims should be dismissed. To constitute protected activity under either Title VII or the EPA for a sex-based pay disparity, a plaintiff must raise a complaint that he or she received less pay ***because of*** his or her sex – a complaint regarding general dissatisfaction over wages generally does not "trigger protection of the statute," *Leong v. SAP Am., Inc.*, 67 F. Supp. 3d 972, 985-86 (N.D. Ill. 2014); *Tropp v. Ingalls Mem'l. Hosp.*, No. 06 C 414, 2007 U.S. Dist. LEXIS 24837, at *43 (N.D. Ill. Mar. 21, 2007) (illustrating that general complaints of pay inequity are not protected activity and instead complaints must attribute the inequitable treatment to a protected class to be protected); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ( discussing how "filing an official complaint with an employer may constitute statutorily protected activity . . . the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class"); *Nance v. NBC Universal Media, LLC*, No. 16-11635, 2019 U.S. Dist. LEXIS 125621, at *23 (N.D. Ill. July 29, 2019) (granting summary judgment on EPA claim where plaintiff failed to connect complaint to sex). In the present case, while Rehm voiced some general dissatisfaction concerning her salary and being paid less than Mertens, Rehm never once raised a complaint prior to her termination that she was paid less than Mertens <u>because</u> of her sex and/or or that she was being paid less in violation of the EPA. (DPFOF ¶¶ 92-95.)

Even if Rehm could show that she engaged in protected activity under Title VII or EPA, Plaintiff still cannot state a claim under either the direct or indirect method.

**B.    Plaintiff Cannot Present Sufficient, Relevant Evidence Which Infers Retaliatory Intent By CEO Becker**

Under the direct method, a plaintiff must present sufficient, relevant evidence from which a reasonable trier of fact could infer discrimination or retaliation. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2017). Such evidence must "point directly" to a discriminatory or retaliatory reason for the employer's action and be directly related to the employment decision. *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012). Examples of relevant evidence include suspicious timing, ambiguous oral or written statements, or discrimination directed at other employees in the protected group. *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015) (citing *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012)). However, temporal proximity or suspicious timing alone is rarely sufficient to overcome a motion for summary judgment. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015); *Tibbs*, 860 F.3d at 505 ("The problem is that suspicious timing alone is rarely enough by itself. A plaintiff must ordinarily present other evidence that the employer's explanation for the adverse action was pretext for retaliation.").

There is not sufficient evidence here to allow a jury to conclude that the YMCA-GWC's decision to terminate Rehm was because of purported complaints about unequal pay, without relying on conjecture. First, Rehm has not shown the required causal link between the termination and her purported complaint. *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 858 (7th Cir. 2008). It is undisputed that Rehm's reported "complaint" was made in 2018, and never discussed again with YMCA-GWC until Plaintiff's filed a complaint against the YMCA-GWC. (DPFOF ¶¶ 92, 97.) She never questioned her employer why there was a wage differential (DPFOF ¶¶ 94-95) (as noted above, clearly there are legitimate reasons for the differential), and when Rehm complained, CEO Becker simply gave her a raise. (DPFOF ¶ 96.)

Second, there is no suspicious timing. Rehm's "complaint" was lodged in 2018. (DPFOF ¶ 92.) Years passed and it was never discussed, and Rehm continued to get salary increases and incentive bonuses. (DPFOF ¶ 97.) Then, years later, in early 2020, CEO Becker learned of extensive staff complaints regarding Rehm and uncovered serious concern regarding Rehm's performance and determined that there was a total lack of leadership and trust, requiring that he proceed to termination. (See DPFOF ¶¶ 37-91.) There is no evidence sufficient to directly raise an inference of discriminatory intent. Therefore, Rehm must proceed under the indirect method. As explained below, Rehm fails to carry her burden under that method, as well.

### C. Rehm Cannot Show A *Prima Facie* Case Of Retaliation Under Title VII Or The EPA.

Rehm's retaliation claims also fail under the indirect method. In order to state a *prima facie* case of retaliation under Title VII or the EPA, Plaintiff must show "(1) that she engaged in statutorily-protected expression by complaining about discrimination covered by Title VII and/or the Equal Pay Act; (2) that she suffered an adverse job action; and (3) that there is a causal link between the protected expression and the adverse job action." *Krause v. City of LaCrosse,* 246 F.3d 995, 1000 (7th Cir. 2001). Under the familiar *McDonnell Douglas* burden-shifting analysis, if Rehm establishes a *prima facie* case of retaliation, the burden of production shifts to YMCA to come forward with a legitimate and non-retaliatory reason for its actions. *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996) (citing *Griffin v. Bd. of Regents*, 795 F.2d 1281, 1294 (7th Cir. 1986). If YMCA offers a legitimate and non-retaliatory reason for Rehm's discharge, Rehm must show that the YMCA's proffered reasons are pretextual. *Id.; Johnson v. Univ. of Wisconsin-Eau Claire*, 70 F.3d 469, 478-79 (7th Cir. 1995).

### 1. Rehm did not engage in protected activity

As explained above, Rehm did not engage in any protected activity under Title VII or the EPA.

### 2. Rehm cannot demonstrate that there was a causal link between the protected activity and the adverse action.

Because Rehm cannot show that she engaged in protected expression, it is impossible for her to show a causation between that expression and her termination. However, even if Rehm were able to demonstrate that she engaged in a protected expression, she cannot show that this expression had any connection to her termination of employment, much less the required "but for" cause of her termination. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997) (quoting *McKenzie v. Illinois Dep't. of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996)); *see also Karlo v. St. Augustine Coll.*, No. 20-cv-5084, 2021 U.S. District LEXIS 100525, at *16 (N.D. Ill. May 27, 2021); *Heise v. Canon Sols. Am., Inc.*, No. 16C8284, 2018 U.S. Dist. LEXIS 122320, at *29 (N.D. Ill. July 23, 2018) (applying "but for" causation standard to EPA retaliation claims).

There is simply no evidence that Rehm's 2018 concern about her salary (DPFOF ¶¶ 92-93)—which resulted in a raise and was never discussed against until this lawsuit (DPFOF ¶¶ 96-97)—was in any way linked to the termination decision, much less the "but for" cause of Rehm's termination. There is no close temporal proximity (she was fired nearly two years later), and even if there were, "to survive summary judgment, the plaintiff must offer more evidence that supports the inference of a causal link between the two events than simply close temporal proximity." *Majors v. General Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013)*; see also Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2004) ("suspicious timing, standing alone," does not establish a causal connection). There is no evidence here and Plaintiff's retaliation claims should be dismissed accordingly.

### 3. There is no evidence that YMCA-GWC's articulated legitimate, non-retaliatory reasons for termination were pretext for discrimination

As explained above, YMCA-GWC had legitimate, nondiscriminatory reasons for terminating Rehm's employment. Just like Rehm's sex discrimination disparate treatment claim, there is simply no evidence here the 2018 wage "complaint" was the actual reason for Rehm's termination. It is undisputed that, upon complaining about her pay, Rehm got a raise, and that she never complained to YMCA-GWC that she felt like she was being paid less *based upon her sex* and/or for equal work. (DPFOF ¶ 92-93.) In fact, Rehm has previously maintained, under oath, that she is not asserting a claim of retaliation with respect to Rehm's request to CEO Becker for a pay raise (Courtney Decl. Exh. D, Response to Request No. 21) further warranting dismissal of these claims.

### D. Declining To Refund Rehm's YMCA Donation Is Not Actionable Under Title VII Or The EPA

Rehm also claims that she was retaliated against in violation of Title VII and the EPA following her termination when the YMCA-GWC declined to refund her previous charitable contribution to the YMCA-GWC. Such claim is not actionable. First, it cannot be disputed the YMCA-GWC does not refund donations. (DPFOF ¶115.) Second, "[o]nly 'post-employment acts of retaliation that have a nexus to employment are actionable under Title VII,' such that former employees can sue if they are complaining that retaliation "impinges on their future employment prospects or otherwise has a nexus to employment.'" *Waite v. Wood Cnty.*, No. 16-cv-643, 2017 U.S. Dist. LEXIS 186237, at *34 (W.D. Wis. Nov. 9, 2017) (citing *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 888, 891 (7th Cir. 1996)). Charitable donations do not have anything to do with Rehm's employment with YMCA-GWC nor would it impinge her future employment prospects in any way. Third, these anti-retaliation provisions do not protect individuals from "*all retaliation,* but from retaliation that produces an injury or harm." *Lewis v. Wilkie*, 909 F.3d 858, 868 (7th Cir.

2018) emphasis added) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)); *Marzullo v. Nlmk Ind.*, No. 2:18-CV-476-TLS, 2021 U.S. Dist. LEXIS 52694, at *47-48 (N.D. Ind. Mar. 22, 2021). Rehm did not suffer any additional loss or injury. She had simply made a prior donation to a charitable donation.

Nonetheless, again, like her other claims, Rehm produces no facts whatsoever to suggest that YMCA-GWC's decision to not refund a charitable donation was in any way related to Rehm's purported wage complaints to show causation and/or pretext for retaliation.

## CONCLUSION

Accordingly, Defendant YMCA-GWC respectfully requests that the Court grant its motion for summary judgment.

Dated this 18th day of February, 2022.

MICHAEL BEST & FRIEDRICH LLP

By:   /s/ Holly E. Courtney
    Denise Greathouse, SBN 1055644
    790 North Water Street, Suite 2500
    Milwaukee, WI  53202
    Telephone:  (414) 271-6560
    E-mail:  dlgreathouse@michaelbest.com

    Holly E. Courtney, SBN 1081696
    1 S. Pinckney Street, Suite 700
    Madison, WI  53703
    Telephone:  (608) 257-3501
    Email:  hecourtney@michaelbest.com

*Attorneys for Defendant Young Men's Christian Association of Greater Waukesha County, Inc.*